**In the Matter of Robert L. SHEAFFER.**

No. 584S172.

Supreme Court of Indiana.

Dec. 16, 1988.

As Amended Dec. 20, 1988.

James H. Voyles, Indianapolis, for respondent.

Sheldon A. Breskow, Executive Secretary, Gregory Fudge, Staff Atty., Indianapolis, for Indiana Supreme Court Disciplinary Com'n.

PER CURIAM.

The Respondent in this case, Attorney Robert L. Sheaffer, was charged in a one-count Verified Complaint For Disciplinary Action with engaging in professional misconduct in violation of Disciplinary Rules 7-102(A)(6) and (8) and 1-102(A)(1), (4), (5) and (6) of the *Code of Professional Responsibility for Attorneys at Law.* Pursuant to Admission and Discipline Rule 23, the Hearing Officer appointed by this Court has heard the case and has tendered his Findings of Fact including conclusions of law.

The Respondent has petitioned this Court to review the findings and conclusions con-

tending that they are not supported by and are contrary to the evidence presented at the hearing.

The review process employed in disciplinary cases involves this Court's examination not only of the Hearing Officer's findings and conclusions, but also of the entire record tendered in the case. The Hearing Officer's findings receive emphasis due to his unique opportunity for direct observation of the witnesses. *In re Stanton,* (1986), Ind., 492 N.E.2d 1056; *In re McDaniel* (1984), Ind., 470 N.E.2d 1327; *In re Welke* (1984), Ind., 459 N.E.2d 725. This, however, makes neither the findings nor the conclusions of fact and law binding upon this Court. *In re Long and Phillips* (1986), Ind., 486 N.E.2d 1031. Respondent's challenges will be examined within the context of this review process and will be resolved by this Court's determination of the ultimate findings and conclusions.

Having closely reviewed all matters presented in this case, we now find that the Respondent represented Jimmy D. Wilson on criminal charges of Driving While Intoxicated (D.W.I.) with blood alcohol content (B.A.C.) of 0.09% and Possession of a Controlled Substance. The charges arose from an incident which occurred on March 21, 1983.

On that day, Trooper Mike Kolls of the Indiana State Police observed a 1978 white Chevrolet Monte Carlo travelling north of Shelbyville on Road 421, being driven by a man, later identified as Jimmy D. Wilson, accompanied by a female and another male in the front seat. Trooper Kolls observed that the car "slammed on its brakes", pulled off the roadway, partially in a yard and partially on the roadway. Kolls proceeded to go around the car, stop and observe that immediately thereafter, the driver and the passenger riding in the center of the front seat, later identified as Claudeana J. Gaskins (now Claudeana J. Wilson), exited from the driver's side and re-entered the vehicle changing positions. The third passenger, who was later identified as Archie Anderson, remained seated in the front seat, and the car proceeded with Claudeana Jenkins driving. Kolls, with the assistance of Deputy Cooper of the Shelby County Sheriff's Department, stopped the vehicle in Fairland, Indiana. Jimmy D. Wilson was arrested after being given a field sobriety test and a breathalyser test. Claudeana Gaskins was issued a traffic citation.

On September 8, 1983, Jimmy D. Wilson was tried by a jury in the Shelby County Court and was acquitted on the D.W.I. charge but was found guilty of Possession of a Controlled Substance.

During the trial, Trooper Kolls testified that when he first observed the vehicle, Jimmy Wilson was driving. He also testified that he saw the car stop and saw Jimmy and Claudeana exchange positions. The vehicle continued, and, when it was finally stopped by Trooper Kolls, Claudeana Gaskins was driving.

The Wilsons testified that Claudeana was driving at all times, that the car never stopped, that the drivers did not change, and that they had followed State Road 9 and had turned left on to County Road 150 prior to turning on to Road 421.

Because of this conflicting testimony, Kolls interviewed Archie Anderson and obtained a tape-recorded statement regarding what Anderson had observed on March 12, 1983, while a passenger in the Wilson's automobile. Archie Anderson's statement indicated that the three participants made two stops, at the Northside Liquor and at the Crystal Flash gas station and continued northeast on Road 421. His statement corroborated Trooper Kolls' version that Jimmy Wilson had been driving and had exchanged places with Claudeana before they were stopped. His statement also indicated a route which contradicted Wilson and Gaskin's testimony as to where they had turned on to Road 421.

Archie Anderson was told by Jimmy Wilson's mother that the Respondent wanted to speak with him. Archie Anderson called the Respondent who told him to make an appointment and come to talk. Archie related this to Trooper Kolls.

On September 12, 1983, after contacting and receiving the approval of the Shelby County Prosecutor, a body transmitter, referred to by its brand name as "Kel–Set",

was concealed on the person of Archie Anderson prior to the arranged appointment between him and the Respondent at Respondent's law office in Shelbyville, Indiana. The recorder was checked and found to be in correct operating order. Archie and the Respondent met, and their conversation was transmitted and received, monitored and recorded by Trooper Kolls and a detective sergeant of the Indiana State Police.

During the conversation the Respondent told Anderson that Trooper Kolls was trying to get Jimmy Wilson in trouble and that Jimmy was worried. The Respondent further told Anderson that what they were discussing was just between them, and that Anderson should not divulge to Trooper Kolls that he had met with the Respondent or that he even knew who the Respondent was. The Respondent told Anderson that when Kolls returns to reinterview Anderson, Anderson should tell Trooper Kolls that the first time Trooper Kolls talked with him, Anderson was confused; that now Anderson had given the matter some thought and he remembers the route to be as testified to by Wilson.

As a result of Trooper Kolls' investigation, Jimmy D. Wilson and Claudeana Gaskins–Wilson were charged with perjury based upon their testimony at the D.W.I. trial. They both pleaded guilty to the charges. The Respondent was indicted and tried for Obstruction of Justice.

The crux of Respondent's argument centers on the discrepancies in the witnesses' testimonies concerning the route taken by Wilson, Gaskins and Anderson prior to their being stopped. The Respondent contends that the Commission failed to prove, by clear and convincing evidence, that the Respondent knew the information he related to Archie Anderson was in fact false.

We are not persuaded by Respondent's arguments. The essence of Wilson's false testimony at his D.W.I. trial was that Claudeana Gaskins, and not he, drove at all times. The route Wilson and Gaskins had testified to followed State Road 9 to County Road 150 and on to road 421. This route intersects with Road 421 beyond the spot where Trooper Kolls had thought he first observed the vehicle. Such testimony would tend to discredit Trooper Kolls observations and give additional credence to Wilson's denials. The various descriptions of the route taken contain uncertainties; however, there is no discrepancy as to the fact that Wilson had been driving the car and that he stopped on Road 421 and exchanged places with Jenkins. In retrospect, the route taken by the parties prior to turning on to Road 421 becomes far less crucial to the issue of Wilson's perjury. Respondent's actions, however, must be examined under the circumstance and within the context of events existing at the time.

When the Respondent interviewed Anderson, Wilson was under investigation for perjury based on allegations that he had lied at his previous trial. Wilson's testimony as to the route taken was important at that time. It is clear that Respondent's statements during his meeting with Anderson were intended to convince Anderson to reaffirm Wilson's testimony. The Respondent was not concerned with the accuracy of Anderson's recollections; regardless of what those recollections were, the Respondent counseled Anderson to not contradict Wilson's testimony, and, if he had already done so, Anderson was to tell Trooper Koll that he had been confused and had now given the matter some thought. Respondent's clear and specific admonitions to Anderson to deny knowing the Respondent and to keep their meeting secret, particularly from Kolls, further convinces us as to the true purpose of the interview. It is abundantly clear that the Respondent counseled Anderson to lie about their meeting. Had the perjury charges against Wilson come to trial, Anderson would have been a material witness, and this meeting and conversation with the Respondent would have been relevant testimony.

In light of the foregoing, we conclude that the Respondent engaged in conduct which involves dishonesty, deceit and misrepresentation in violation of Disciplinary Rule 1–102(A)(4) of the *Code of Professional Responsibility or Attorneys at Law.*

By counseling Anderson to lie about their meeting and to change his statement to Trooper Kolls, the Respondent participated in the creation and preservation of evidence when it was obvious that the evidence was false, in violation of Disciplinary Rule 7–102(A)(6). Such conduct is prejudicial to the administration of justice and adversely reflects on Respondent's fitness to practice law, in violation of Disciplinary Rule 1–102(A)(5) and (6).

■ Upon finding that the Respondent engaged in professional misconduct, we must assess an appropriate disciplinary sanction. In so doing, we examine the nature of the violation, the specific acts of the Respondent, the impact to the public, this Court's responsibility to preserve the integrity of the Bar, and the risk, if any, to which the public will be subjected if the Respondent is permitted to continue in the profession. *In re Briggs* (1987), Ind., 502 N.E.2d 890.

■ The findings before us reveal professional conduct which transgressed the bounds of zealous representation. Respondent sought out Archie Anderson, a material witness in a criminal investigation against Respondent's client, and counseled him to conceal their interview from the investigative officer and to alter the statements he had already given to said officer. Such conduct frustrates effective law enforcement and the orderly administration of justice. The sanction imposed must reflect the gravity of the misconduct. In light of the specific nature of Respondent's acts, we conclude that a period of suspension is warranted. It is, therefore, ordered, adjudged and decreed that the Respondent, Robert L. Sheaffer, is suspended from the practice of law for a period of not less than two (2) years, beginning January 16, 1989.

Costs of this proceeding are assessed against the Respondent.